Argued and submitted March 22, reversed and remanded October 2, reconsideration denied November 27, petition for review denied December 17, 1991 (312 Or 527)

Jessica DEE,
by and through
her guardian ad litem Elaine McDonald,
Nickelle Dee and Elaine McDonald,
*Appellants,*

*v.*

Eric POMEROY,
Richard Pomeroy, The State of Oregon
and James Waddell,
*Defendants,*

THE CITY OF GEARHART,
Brian Kitto, Jeffrey Bowman
and Bruce Maltman,
*Respondents.*

(CC86-2222; CA A61155)

818 P2d 523

Wayne Mackeson, Portland, argued the cause for appellants. With him on the briefs were Daniel C. Lorenz and Des Connall, a Professional Corporation, Portland.

Michael Lehner, Portland, argued the cause for respondents. With him on the brief was Lehner & Mitchell, Portland.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Riggs, Judge.

WARREN, P. J.

## WARREN, P. J.

This is a personal injury case in which a police chase resulted in injury to plaintiffs, who were passengers in the pursued vehicle. Plaintiffs appeal from a directed verdict for defendants. We reverse.

The evidence, viewed in the light most favorable to plaintiffs, is that, at 10:50 p.m. on September 6, 1986, Gearhart police officer Kitto and State Trooper Shawver saw two vehicles "of the sort usually driven by teenagers," speeding on Highway 101. Shawver pulled onto the highway and pursued the cars. He reached a top speed of 75 mph, but did not gain ground on them. Kitto also gave chase. Shawver followed one car when it turned off the highway; Kitto continued to follow the other. Kitto had also reached a speed of 75 mph, when he saw the car that was still on Highway 101 make a U-turn in front of him. When the car passed Kitto going in the opposite direction, Kitto turned on his overhead lights, made a U-turn and began chasing in the opposite direction. By the time Kitto got turned around, the car was out of his sight.

Kitto continued on the highway and within a short distance saw a car turn off the highway west onto Pacific Way in Gearhart. He also turned onto Pacific Way, looking for the car. There is evidence that he was going up to 45 mph on the .8 mile street, as he continued to look for the car. He saw the fleeing car and was close enough behind it that plaintiffs, passengers in that car, could see the overhead lights. When Kitto reached the end of Pacific Way, he saw that the car, driven by Eric Pomeroy, had struck boulders that blocked the street where it enters the sand dunes and beach. Plaintiffs were injured in the collision with the boulders.

Before trial, plaintiffs settled their claims against the Pomeroys and released them from further liability. The only claims that remained by the time of trial and that plaintiffs pursue here were for negligence against Kitto, the City of Gearhart, its police chief and its city administrator.[1] They

---

[1] Plaintiffs make no arguments here relating to their allegations that the city was negligent in certain particulars relating to the intersection at which the accident occurred and apparently have abandoned them. Plaintiffs also asserted a 42 USC § 1983 claim; it was dismissed at trial and is not involved in this appeal. Defendants ask

alleged that Kitto and the city were negligent in (1) initiating the high speed chase; (2) failing to break off the chase; (3) violating ORS 820.300 and ORS 820.320[2] by engaging in a chase that unreasonably placed persons at risk of injury; and (4) chasing the car toward a known obstruction. They also alleged that the city and its officers were negligent in (1) failing adequately to supervise Kitto; (2) failing adequately to train Kitto; and (3) failing to adopt, implement and enforce adequate practices and procedures for high speed chases. The trial court granted defendants' motion for directed verdict on the ground that plaintiffs' settlement with the Pomeroys for more than the limit of liability for public bodies under ORS 30.270(1) barred their claims against the public defendants and, in the alternative, because there was no evidence of negligence.

██ Plaintiffs assert that the trial court erred in holding that the settlement with the Pomeroys bars their claims. They argue that ORS 30.270 and ORS 18.455 limit defendants' ultimate liability, but not the claims that may be asserted against them. Defendants argue that, under the statutes, "[t]he maximum claim plaintiffs can assert against these defendants * * * is $100,000 per claimant" and, therefore, the claims are barred by the settlement with the Pomeroys, which was for more than the statutory limit.

Defendants are wrong. ORS 30.270 provides, in part:

"(1) *Liability* of any public body or its officers, employees or agents acting within the scope of their employment or duties *on claims* within the scope of ORS 30.260 to 30.300 *shall not exceed:*

"(a) $50,000 * * * for damage to or destruction of property * * *.

"(b) $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence * * *.

---

us to award attorney fees under 42 USC § 1988. The trial court denied fees, and defendants do not cross-appeal. We will not consider their request.

[2] Plaintiffs' complaint cites "ORS 800.320"; there is no ORS 800.320. In their briefs, plaintiffs refer to ORS 820.320, which relates to illegal operation of emergency vehicles.

"(c)    $500,000 for any number of claims arising out of a single accident or occurrence." (Emphasis supplied.)

ORS 18.455(1) provides, in part:

"When a covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury * * * or claimed to be liable in tort for the same injury * * *:

"(a)    It does not discharge any of the other tortfeasors from liability for the injury * * * unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater * * *."

The issue is whether, when a nonsettling party's liability is limited by statute or otherwise, the amount of the settlement should be subtracted from the limit, or whether it should be subtracted from the final determination of the plaintiff's damage. Taking into consideration case law and the purpose of the Oregon version of the Uniform Contribution Among Tortfeasors Act, ORS 18.440 through ORS 18.460, we conclude that the amount of the settlement should be subtracted from the total amount of damages, not from the public body's liability limit.

In *Domaschofsky v. Polk County,* 20 Or App 181, 530 P2d 852, *rev den* (1975), one of the plaintiffs was injured in an automobile-train collision. The plaintiffs filed actions against the railroad company and the county that maintained the road that crossed the railroad track, seeking damages of $250,000. At the time of the accident, *former* ORS 368.940 limited recovery against the county to $10,000. The plaintiffs settled with the railroad for $37,500. The county asserted that that settlement should be set off against the county's maximum liability of $10,000, with the result that the plaintiffs' claim against the county was barred by the settlement with the joint tortfeasor for more than the statutory limit. The trial court agreed with the county, but we reversed.

We recognized "the basic rule that a judgment creditor is 'entitled to only one satisfaction of his judgment.' *Starr v. Heckathorne,* 270 Or 238, 240, 527 P2d 401 (1974)." 20 Or App at 185. We rejected the essence of the county's argument, which was that the statute limited its liability to the *first*

$10,000 in damages sustained. We concluded that "the statute is a mere limitation upon the County's total liability regardless of the total damages suffered or number of tortfeasors involved." *Domaschofsky v. Polk County, supra,* 20 Or App at 186.

Although neither ORS 30.270 nor ORS 18.455(1) was at issue in *Domaschofsky,* defendants make similar arguments here, and we reject them for the same reasons. We see no substantive difference that is relevant to this case between the limited liability language in *former* ORS 368.940 that a person "is entitled to recover of the county * * * compensatory damages, not exceeding $10,000 in any case" and the language in ORS 30.270 that "[l]iability of any public body * * * shall not exceed * * * $100,000 to any claimant as general and special damages * * *."

■ Furthermore, the county's argument for a reduction in *Domaschofsky* was based on the common law principle that payment made by a joint tortfeasor in settlement of a claim extinguishes *pro tanto* the amount of damages that the injured person could recover. Both the common law rule and the Uniform Contribution Among Tortfeasors Act, from which ORS 18.455 is derived, are based on the concept that a plaintiff is entitled "to receive only the amount of [the] adjudged damages and no more, regardless of the source of the recovery." *Layne v. United States,* 460 F2d 409, 411 (9th Cir 1972). The purpose of the uniform act is to permit contribution among tortfeasors responsible for the plaintiff's damages. It was not intended to reduce the injured person's right to recover "the amount of damages required to fully compensate a claimant for his injuries and losses * * *." *Buckner v. Cocke County,* 720 SW 2d 472, 473 (Tenn App 1986).

Accordingly, we hold that, when a plaintiff settles a tort claim with a joint tortfeasor and proceeds against a defendant whose liability is limited, unless the settlement is for the full amount of the prayer, a factfinder should determine the full amount of damages, if any. If the full damages are equal to or less than the amount of the settlement, the limited liability defendant is entitled to a judgment. If the damages exceed the amount of the settlement, the plaintiff is

entitled to a judgment for the difference between the settlement and the actual damages, but not to exceed the defendant's liability limit. *See Yardley v. Rucker Brothers Trucking, Inc.,* 42 Or App 239, 242, 600 P2d 485 (1979), *rev den* 288 Or 335 (1980); *Domaschofsky v. Polk County, supra; accord State v. Eaton,* 101 Nev 705, 710 P2d 1370 (1985); *Buckner v. Cocke County, supra.* The trial court erred in concluding that the settlement extinguished the claims against defendants.

Defendants next argue that they are immune from liability and that, if they are not immune, the evidence does not support a finding of negligence.

■■ A public body and its employees are immune from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." ORS 30.265(3)(c). Kitto's decision to pursue Pomeroy's car and the manner in which he chased the car are not discretionary choices for which Kitto is immune under ORS 30.265(3)(c). *Lowrimore v. Dimmitt,* 310 Or 291, 296, 797 P2d 1027 (1990). Although in its memorandum filed in this court in response to the *Lowrimore* decision, defendants assert that their "argument in this case is not based on discretionary immunity under ORS 30.265(3)(c)," that is the affirmative defense that they asserted in the trial court. We will not respond to their arguments about common law principles of immunity and ORS 30.265(2), because those issues were not raised below.[3]

■■ Defendants also contend that there was no evidence of negligence. Kitto was not negligent in instituting the pursuit, "for police officers have express authority to stop and detain persons for traffic infractions, ORS 810.410(3)(b)." *Lowrimore v. Dimmitt, supra,* 310 Or at 297. However, in the light of evidence about the nature of the traffic offense that precipitated the chase, the speed at which the car was traveling and Kitto's knowledge of the barricade at the end of the street, we cannot say as a matter of law that the manner in which the chase was continued could not be found to have

---

[3] Defendants do not argue that they are immune under ORS 30.265(3)(c) for the alleged negligence in supervising and training Kitto and regarding the emergency vehicle operation policy.

been negligent and created a foreseeable risk of harm to passengers in the fleeing car. *See Lowrimore v. Dimmitt, supra,* 310 Or at 297.

■ As for negligence by the city and its officers, plaintiffs have not directed us to any evidence of inadequate supervision. We conclude that there was, however, some evidence from which a jury could have found negligence in the training of Kitto and in the emergency vehicle operation policy. There was evidence that Kitto had not had specific training for emergency vehicle operation before the accident and that he should have received that training. There was also evidence that the city's policy regarding when to discontinue a chase did not provide necessary guidance to a police officer. In essence, the policy was that an officer should stop pursuit when it appears that serious injury could result. There was testimony that that policy does not provide necessary guidance for officers in pursuit situations. We cannot say as a matter of law that there was no evidence from which a jury could find negligence.

■ Plaintiffs also assign error to three evidentiary rulings. The first two assignments relate to objections that go to the form of questions. Because on retrial the form of the questions and the context in which they may be asked could differ substantially from the way the questions were asked at this trial, we will not address the assignments. We decline to reach plaintiffs' final assignment of error that the trial court erred in ruling that their counsel "vouched" for the testimony of their witnesses. The trial court's "ruling" on this matter was unsolicited, and plaintiffs point to no questions that were asked that the court would not allow or to any evidence that they offered that the court excluded. Therefore, there is nothing for us to review.

Reversed and remanded.